## Pottstown Iron Co. *versus* Fanning and Wife.

The owner and operator of a trestle, which was also used as a place for the storage of ore, who removed the ore from one side of a trestle, leaving a large weight of ore to press against the other side, without interposing props as supports; and by neglecting so to do caused the death of one who was lawfully upon the trestle and had no knowledge or warning of the unsafe condition of the trestle, is liable in an action for damages sustained by reason of said neglect.

[Pottstown Iron Co. v. Fanning.]

March 22d, 1886. Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No 3 of *Philadel-
phia county :* Of January Term 1885, No. 114.

This was an action of trespass on the case brought by Jef-
frey Fanning and wife against The Pottstown Iron Company,
to recover damages sustained by them by the loss of their son,
whom they alleged was killed through the negligence of the
defendant. Plea, not guilty.

The following are the facts as they appeared on the trial
before LUDLOW, P. J.

The deceased, Edward H. Fanning, was a brakeman in the
employ of the Reading Railroad Company, and on the morn-
ing of December 22d, 1882, was at work upon an engine be-
longing to the railroad company, which was engaged in push-
ing cars loaded with iron ore upon a trestle-work about fifteen
feet in height, erected upon the property of the defendants and
belonging to them. After leaving the cars at the point where
they were to be unloaded, the engine and tender were coming
slowly down, when the trestle-work gave way, throwing the
engine to the ground and causing the death of the plaintiff's
son. The point at which the trestle gave way was at a two-
story or double trestle, which had been allowed to remain by
plaintiffs after all others of a similar construction had been re-
moved by them.

As originally constructed, the trestle-work had been composed
entirely of single trestles about ten feet high. The spaces be-
tween the trestles were used for the storage of iron ore, and
communicated with bins for the same purpose. At the time
of the accident the ore from one of the bins had been entirely
removed, and no support for the trestles had been supplied, so
that the ore in the adjoining bins pressed against them and
thereby weakened the support of the trestles upon them.

In 1879, the Iron Company desired more storage room, and
it not being convenient for them to remove the ore and put in
new trestles, they decided to raise the old trestles by adding a
second story, without providing any additional support.

The defendant presented *inter alia* the following points :

3. Inasmuch as the decedent had been employed in hauling
cars over the trestle in question and dumping their contents
into their respective bins for over a year, and was during all
that time almost every day engaged more or less in such occu-
pation, he must be presumed to have had as much knowledge
of the sufficiency of the trestle for the weights he was taking
upon it and dumping into said bins as the defendant, and as
no notice of any defect therein was given by the decedent or
any other person to the company defendant, there is no liabil-

[*Pottstown Iron Co. v. Fanning.*]

ity on the part of the defendant, for the accident in question, and the verdict must be for the defendant.

*Answer.*—If the jury find that the bridge was in a dangerous condition, then and in that event the point is affirmed. If the jury find that no apparent cause existed which would lead an employee to suspect danger, then the point is refused. (First assignment of error.)

4. The uncontradicted evidence being that defendant employed the Philadelphia and Reading Company, a competent party, to construct for it the original trestle at the place in question, and having obtained from the engineer of that company a competent person's suggestions and ground plan and grades as to the proper method of elevating such trestle, and having in all respects followed said suggestions and plan, the verdict must be for the defendant.

*Answer.*—Declined as stated. Affirmed if the jury so find as a matter of fact. I have substantially said that in addressing the jury. (Second assignment of error.)

5. The uncontradicted evidence being that the trestle in question was constructed at first for defendant by Philadelphia and Reading Railroad Company, a competent person for such work, and no notice of any defect therein having been brought to the knowledge of the defendant, the verdict must be for the defendant.

*Answer.*—If the jury so find the facts, then only is the point affirmed. (Third assignment of error.)

6. There being no sufficient evidence in this cause to justify a finding by the jury that the defendant was guilty of any negligence in building or caring for the trestle in dispute, the verdict should be for the defendant. (Fourth assignment of error.)

*Answer.*—Refused. There are questions of fact for the jury and therefore the point as stated is declined. (Fourth assignment of error.)

7. Under all the evidence in this cause the verdict should be for the defendant. Answer, refused. (Fifth assignment of error.)

Verdict for the plaintiffs in the sum of $1,000, and judgment thereon, whereupon the defendant took this writ assigning for error the answers of the court to the defendant's points as above shown.

*Wayne Mac Veagh* (*M. D. Evans* with him), for plaintiff in error.

*J. J. McCaffrey* and *Robert H. Hinckley*, for defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, October 4th, 1886.

Recognizing the propriety of submitting the case to the jury on questions of fact raised by the evidence, the defendant below requested the court to charge: " *First.*—The burden in this case is on the plaintiff to satisfy the jury that the accident in question was wholly due to the negligence of the defendant, and unless the jury is so satisfied, their verdict must be for the defendant. *Second.*—If the jury believe that the excessive weight of the engine, or its undue tendency to get off the rails, or the absence of fish or splice plates, at the place of the accident, contributed to the accident, the verdict must be for the defendant."—These propositions were both affirmed without any qualification, and a verdict was given in favor of plaintiffs below. In view of the instructions thus given, it follows that the jury, in reaching the conclusion they did, must have found that the accident in question was wholly due to the negligence of the defendant, and that neither of the causes specified in the second point contributed thereto.

In its sixth and seventh points, the company defendant, somewhat inconsistently with the position assumed in the points above quoted, requested the court to charge in substance, that under all the evidence the verdict should be for the defendant, because there was no sufficient evidence to justify the jury in finding the company guilty of negligence in building or caring for the trestle in question. The court declined to so charge and thus withdraw the case from the jury, saying: " These are questions of fact for the jury, and therefore the point as stated is declined." An examination of the testimony satisfies us there was no error in this ; that there was evidence proper for the consideration of the jury, tending to prove negligence of the defendant. Plaintiff's main contention was that the accident resulted from the condition in which the trestle work was carelessly and negligently left by the defendant, on the morning of the accident, by removal of the previous weight of all the ore from one of the spaces adjoining the double trestle, and thereby allowing from thirty to fifty tons of ore to remain piled up against and nearly to the top of the other side ; that the pressure of this body of ore forced the double trestle out of position and caused it to " buckle," or double upon itself, as one of the witnesses expressed it, thus depriving the track of necessary support, and causing the engine to break through. The testimony of Benjamin M. Gest, John A. Elliott and others tended to support this theory of plaintiffs below, and was manifestly proper for the consideration of the jury. It is unnecessary to refer more particularly to the testimony on this subject. Suffice it to say, that it was quite sufficient

to justify the court in refusing the defendant's sixth and seventh points. The fourth and fifth specifications are therefore dis-missed.

The subjects of complaint in the three remaining specifica-tions, are the refusal of the court to unconditionally affirm de-fendant's third, fourth and fifth points. There is nothing in the qualified answers of the court to either of these points that can justly be regarded as unduly prejudicial to plaintiff in error. On the contrary they are quite as favorable to the com-pany as, in view of the testimony, it had a right to ask. The case hinged on questions of fact, arising out of the testimony, to the admission of which there is no objection. These ques-tions were fairly and correctly submitted to the jury, the prop-er tribunal for their final determination, and their finding has been adverse to the plaintiff in error. If the verdict was con-trary to the weight of the evidence, the power to grant relief was in the court below. That question is not before us. We find nothing in either of the five specifications of error, that would warrant a reversal of the judgment.

Judgment affirmed.